UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
WILLIAM CAMPBELL RIES, as Administrator          Case No.: 16-cv-690
of the Estate of MEI LING CH'NG, deceased,

                          Plaintiff,          **COMPLAINT**

       v.

                                            **JURY TRIAL DEMANDED**
MALAYSIAN AIRLINE SYSTEM BERHAD,
d/b/a MALAYSIA AIRLINES,

                          Defendant.
-----------------------------------------------------------------

Plaintiff William Campbell Ries, as Administrator of the Estate of Mei Ling Ch'ng, by and through his attorneys, Kreindler & Kreindler LLP, states as follows:

## I.      INTRODUCTION

1.      On March 8, 2014 at approximately 2:22 a.m. Malaysia Standard Time ("MYT") Malaysia Airlines Flight 370 ("MH370") disappeared during a scheduled international passenger flight from Kuala Lumpur International Airport in Malaysia to Beijing Capital International Airport in China.  The Boeing 777-200ER airplane bearing the registration number 9M-MRO, carried 12 crew members and 227 passengers from 15 nations.  The international investigation found that MH370 crashed into the Southern Indian Ocean off the west coast of Australia hours after it disappeared.  On July 29, 2015, an airplane component, known as a flaperon, was discovered in the waters off Reunion Island and the component has been confirmed to be from MH370.

2.      Mei Ling Ch'ng, a Pennsylvania resident, was a passenger on board MH370 and was lost when the airplane crashed into the Southern Indian Ocean.

3.     This is an action for damages pursuant to the Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106-45 (2000), 49 U.S.C. § 40105 (the "Montreal Convention").

## II.     PARTIES

4.     On December 23, 2015, the Orphan's Court Division of the Court of Common Pleas of Allegheny County, Pennsylvania ordered that Mei Ling Ch'ng was presumed to have died on March 8, 2014.

5.     Plaintiff William Campbell Ries was appointed the Administrator of the Estate of Mei Ling Ch'ng on January 5, 2016 by order of the Orphan's Court Division of the Court of Common Pleas of Allegheny County, Pennsylvania, and he brings this action on behalf of all heirs and next of kin of Mei Ling Ch'ng and the Estate of Mei Ling Ch'ng.

6.     At all relevant times, South Park, Pennsylvania was Mei Ling Ch'ng's principal and permanent residence.

7.     Mei Ling Ch'ng owned a home in South Park and was employed in Monongahela, Pennsylvania by Eastman Chemicals since 2008.

8.     Mei Ling Ch'ng is included on the official Malaysia Airlines flight manifest for MH370, thereby certifying that she was a passenger on the flight.

9.     Defendant Malaysian Airline System Berhad (hereafter "MAS"), doing business as Malaysia Airlines, was at all times relevant to this Complaint a common air carrier for hire in the business of soliciting and transporting passengers on regularly scheduled international air travel.

### III.   <u>JURISDICTION AND VENUE</u>

10.     At all relevant times, MAS was a Malaysian air carrier and the Government of Malaysia owned the majority of its shares.

11.     At all relevant times, MAS was engaged in "commercial activity" within the meaning of 28 U.S.C. § 1605(a)(2) of the Foreign Soverign Immunity Act, including transporting fare-paying passengers on international flights, selling tickets for those flights in the U.S., and was otherwise engaging in commercial activity in the U.S.

12.     MAS is not entitled to sovereign immunity because the instant claim arises from a commercial activity, within the meaning of the Foreign Soverign Immunity Act.

13.     Additionally MAS is not entitled to sovereign immunity in accordance with 28 U.S.C. § 1605(a)(1) because Malaysia waived sovereign immunity when it became a States Party to the Montreal Convention.

14.     At all relevant times Malaysia was a States Party to the Montreal Convention.

15.     In adhering to the Montreal Convention, Malaysia agreed:

   a.  That the Convention applied to all international carriage of persons performed by aircraft for reward.  *See* Montreal Convention Article 1.1.

   b.  That the "Convention applies to carriage performed by the State or by legally constituted public bodies . . . ."  *See* Montreal Convention Article 2.1.

   c.  That air carriers are "liable for damage sustained in case of death . . . of a passenger . . . ." *See* Montreal Convention Article 17.1.

   d.  That "[a]n action for damages <u>must</u> be brought <u>at the option of the plaintiff</u> in the territory of one of the States Parties [to the Montreal Convention]; either before the court of the domicile of the carrier or of its principal place or business, or

where it has a place of business through which the contract has been made or before the court at the place of destination. . . . [or] in the territory of a State Party in which at the time of the accident the passenger has his or her principal and permanent residence and to or from which the carrier operates services for the carriage of passengers by air . . . ." *See* Montreal Convention Article 33.1 and .2 (emphasis supplied).

16.     Malaysia further waived sovereign immunity by applying for and obtaining a Foreign Air Carrier Permit from the Federal Aviation Authority, under 49 U.S.C. § 41301, which waived sovereign immunity for lawsuits "based on a claim under any international agreement or treaty cognizable in any court or tribunal of the United States."

17.     MAS waived any claim of sovereign immunity by incorporating the Montreal Convention by reference into the terms and conditions of carriage of Mei Ling Ch'ng's ticket for MH370.

18.     This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331, in that this matter arises under the laws, regulations and treaties of the United States, including but not limited to the Montreal Convention:

      a.  This Court has subject matter jurisdiction over this dispute pursuant to Article 33.1 of the Montreal Convention because Mei Ling Ch'ng's contract of carriage (her air ticket) was purchased in the U.S.

      b.  This Court has subject matter jurisdiction over this dispute pursuant to Article 33.1 of the Montreal Convention because Mei Ling Ch'ng's destination on her ticket was the U.S.

    c.   This Court has subject matter jurisdiction over this dispute pursuant to Article 33.2 of the Montreal Convention because Mei Ling Ch'ng maintained her principal and permanent residence in the U.S. and at the relevant times Malaysia Airlines operated services for the carriage of passengers by air to or from the U.S.

19.    This court may also exercise both subject matter and personal jurisdiction over MAS because under 28 U.S.C. § 1605(a)(2) this action is based on an act by MAS "outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that causes a direct effect in the United States."

20.    This court further has subject matter jurisdiction over this dispute because it is between a citizen of Pennsylvania and a foreign corporation and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

21.    Venue is proper in this court because under 28 U.S.C. § 1391(f)(3) MAS was both "licensed to do business" and/or "doing business" in New York at all relevant times through its office located at 147 West 35th Street, Suite 1505, New York, New York, 10001.

## IV.    FACTUAL BACKGROUND

22.    On March 8, 2014, MH370 departed from Kuala Lumpur International Airport on a flight to Beijing Capital International Airport.

23.    On March 8, 2014, Mei Ling Ch'ng was a fare-paying passenger on the subject flight, and was on the first leg of a flight that would return her to her home in Pennsylvania.

24.    At 12:42 a.m. MYT, MH370 took off from runway 32R at Kuala Lumpur International Airport.

25.     The last normal automated Aircraft Communication Addressing and Reporting System ("ACARS")[1] transmission from MH370 was received at 1:07:29 a.m. MYT.

26.     At 1:19:26 a.m. MYT, MH370 was instructed by Kuala Lumpur air traffic control to contact Ho Chi Minh air traffic control in Vietnam, and MH370 acknowledged the instruction with "Good night Malaysia Three Seven Zero."  MH370 never made contact with Ho Chi Minh air traffic control, and that was the last radio call received from the flight.

27.     At 1:20:36 a.m. MYT, MH370's Mode S symbol dropped off radar display indicating that the airplane's transponder[2] was no longer broadcasting.

28.     At 1:21:13 a.m. MYT Malaysian Military radar showed MH370 turning left to head in a south westerly direction, then proceeding to cross back over the Malay Peninsula.

29.     Military radar tracked MH370 until it disappeared from radar over the Strait of Malacca at 2:22:12 a.m. MYT.

30.     Analysis of the automatic transmissions between MH370 and a communications satellite after this time have led investigators to conclude that the airplane turned south after it was lost to radar and continued to fly until it ran out of fuel and crashed into the Southern Indian Ocean.

31.     On March 24, 2014, both MAS and Malaysian Prime Minister Najib Razak announced that flight data showed that MH370 crashed into the Southern Indian Ocean.

---

[1] ACARS is a digital data-link system that communicates between the plane and ground based services using both ground based radio towers and satellites.  It sends event updates when the plane leaves the gate, takes off, lands, and pulls into the destination gate.  It also transmits numerous types of real-time technical data relevant to the flight, such as flight plans, weather information, data on the real-time equipment heath of the plane, its location and heading, and the performance of its engines.  The ACARS systems aboard MH370 should normally transmit at least once every 30 minutes, or they will be "pinged" by the control center to assess the situation and re-establish contact.
[2] MH370 was equipped with a transponder used to identify the plane on radar.  The transponder replies to the interrogations of ground and aircraft based radar in a form of standardized code called "Mode S".  This information is used to interpret and display the plane's position on most civilian based radar and Air Traffic Control systems.

32.     On January 29, 2015, the Director General of the Department of Civil Aviation Malaysia, Azharuddin Abdul Rahman, changed MH370's status to an "accident," in accordance with the Chicago Convention on International Civil Aviation.

**COUNT I**
**LIABILITY UNDER THE MONTREAL CONVENTION**

33.     Plaintiff incorporates and re-alleges each of the allegations set forth above as though fully set forth herein.

34.     At all relevant times, MAS was a common carrier engaged in the business of providing air transport to fare-paying passengers on international flights under the terms of the Montreal Convention.

35.     MH370 was an international flight that was part of MAS's international carriage of Mei Ling Ch'ng between two nations that are States Parties to the Montreal Convention, namely Malaysia and the U.S.

36.     Mei Ling Ch'ng was a passenger on MH370 and received bodily injuries that caused her death when MH370 crashed into the Southern Indian Ocean.

37.     The crash of MH370 constituted an accident pursuant to the Montreal Convention.

38.     Article 17.1 of the Montreal Convention states that a "carrier is liable for damage sustained in case of death or bodily injury of a passenger" in an accident.

39.     The accident was the direct and proximate cause of the following damages:

a.      Mei Ling Ch'ng's survivors' loss of her care, comfort and companionship.

b.      Me Ling Ch'ng's survivors' loss of her financial support.

c.      Mei Ling Ch'ng's survivors' loss of her services.

d.      Mei Ling Ch'ng's survivors' loss of net estate accumulations, and for any

damages that Mei Ling Ch'ng's survivors may be entitled to under applicable law.

40.    Defendant MAS is strictly liable for the injuries and death of Mei Ling Ch'ng under the terms of the Montreal Convention up to 113,100 Special Drawing Rights ("SDRs")[3].

41.    Defendant MAS is liable for all personal injury and wrongful death damages above 113,100 SDRs pursuant the Montreal Convention because it cannot meet its burden of proving that the loss of MH370 was "not due to the negligence or other wrongful act or omission of [MAS] or its servants or agents; or . . . solely due to the negligence or other wrongful act or omission of a third party." *See* Montreal Convention, Article 21.2.

WHEREFORE, the Plaintiff William Campbell Ries, as Administrator of the Estate of Mei Ling Ch'ng, demands judgment against defendant Malaysian Airline System Berhad, doing business as Malaysia Airlines, for compensatory damages, plus interest, costs and attorney's fees.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury.

Respectfully submitted,

KREINDLER & KREINDLER LLP

By     /s/ Justin T. Green
        Justin T. Green (JG0318))
        Marc S. Moller
        Vincent C. Lesch
        750 Third Avenue
        New York, New York 10017
        Tel.: (212) 687-8181
        Fax:  (212) 972-9432
        Email: jgreen@kreindler.com
        Email: mmoller@kreindler.com
        Email: vlesch@kreindler.com
        *Attorneys for Plaintiff*

---

[3] SDRs are supplementary international reserve assets defined and maintained by the International Monetary Fund. The value of an SDR is determined by the value of a number of different currencies.